UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY ANN HALE,

                Plaintiff,              CIVIL ACTION NO. 10-10751

           v.                   DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF            MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.    PROCEDURAL HISTORY

### A.    *Proceedings in this Court*

On February 23, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability insurance benefits (Dkt. No. 3).  This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 9, 12).

### B.    *Administrative Proceedings*

Plaintiff filed the instant claims on February 21, 2008, alleging that she became unable to work on October 26, 2006 (Tr. 14, 92-93).  The claim was initially disapproved by the Commissioner on May 1, 2008 (Tr. 14, 49-52).  Plaintiff requested a hearing and on March 5, 2009, Plaintiff

-1-

appeared with counsel before Administrative Law Judge (ALJ) William C. Thompson, Jr., who

considered the case *de novo*.  In a decision dated August 21, 2009, the ALJ found that Plaintiff was

not disabled (Tr. 11-21).  Plaintiff requested a review of this decision on September 25, 2009 (Tr.

8-10).  The ALJ's decision became the final decision of the Commissioner when, after the review

of additional exhibits[1] (Exhibit 14E, Exhibit 20F, Tr. 5), the Appeals Council, on January 29, 2010,

denied Plaintiff's request for review (Tr. 1-4).

In light of the entire record in this case, I find that substantial evidence supports the

Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is **RECOMMENDED**

that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary

judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

Plaintiff was 48 years old at the time of the most recent administrative hearing (Tr. 26, 163).

Plaintiff's relevant work history included approximately six years as a school secretary and six years

as a bank teller and customer service rep (Tr. 28).  The ALJ applied the five-step disability analysis

to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity

since October 26, 2006 (Tr. 16).  At step two, the ALJ found that Plaintiff had the following "severe"

impairments: arthritis and fatigue.  *Id*.  At step three, the ALJ found no evidence that Plaintiff's

combination of impairments met or equaled one of the listings in the regulations (Tr. 18).  Between

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work . . . with the following additional limitations: [Plaintiff] can occasionally bend, stoop, twist, squat, kneel and crawl and can climb stairs but can never climb ladders, ropes or stairs; she cannot work at heights or with hazardous machinery; she cannot be exposed to extreme heat or extreme cold and must avoid even moderate exposure to vibrations" (Tr. 18). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a school secretary and bank teller (Tr. 21). At step five, the ALJ denied Plaintiff benefits, because – even assuming Plaintiff were unable to perform her past work – the ALJ found that Plaintiff could perform a significant number of other jobs, such as cashier (32,000 jobs in Michigan), sales attendant (6,000 jobs in Michigan) and light assembly (4,500 jobs in Michigan) (Tr. 21).

### B.    Administrative Record

#### 1.    Plaintiff's Testimony and Statements

Plaintiff alleges that she has been disabled since October 26, 2006 (Tr. 92, 96, 100), due to back pain, rheumatoid arthritis, extreme fatigue, Hodgkin's Lymphoma (in remission), joint pain, limited strength and decreased mental focus (Tr. 100). She stated that she needs to "lie down and take rests frequently during the day," that she experiences hip and back pain regularly, and that her hands are stiff in the morning. *Id*. Plaintiff was last employed on October 26, 2006 when she quit her job as a secretary for the school district to start chemotherapy treatment for Hodgkin's lymphoma (Tr. 27-29).

During the hearing before the ALJ, Plaintiff stated that the back pain she experiences, while not present when she wakes up in the morning, begins to hurt after a couple of hours once she starts "moving around and doing things" (Tr. 40). Plaintiff rated her back pain on a zero (no pain) to ten

-3-

(need to go to emergency room) scale as a six on a regular basis and an eight or nine when she is experiencing spasms which she claimed occur approximately three to four times per week (Tr. 38, 41). In order to control her back pain, Plaintiff typically takes two Darvocet daily. *Id*. Plaintiff also complained of hip pain experienced primarily when she is lying on her hip for an extended period and also every other day when walking (Tr. 41-42).

In addition, Plaintiff reported that she experiences tightness in her hands, even when using medication such as prednisone. *Id.* Plaintiff stated that, while this medication was helpful in relieving some of the pain in her hands, the stiffness remains, causing some difficulty with small detailed tasks such as "chopping up stuff" (Tr. 42). Despite the stiffness in her hands, Plaintiff reported that she is still able to lift a gallon of milk as well as put stoneware dishes away four at a time (Tr. 36).

Plaintiff also stated that she is able to perform light chores such as putting dishes in the dishwasher, dusting, and laundry, but that she requires breaks when performing such tasks (Tr. 32). Plaintiff reported that she is unable to perform more labor intensive tasks such as vacuuming stating that "[i]t's almost too heavy for me" and that her back starts to spasm. *Id*. Furthermore, Plaintiff stated that she is capable of cooking dinners such as "tacos, taco salad, and spaghetti" (Tr. 33).

### 2.    Medical Evidence

On January 24, 2008, Plaintiff saw Parveen Qazi, M.D., a rheumatologist (Tr. 319). Upon examination, Dr. Qazi observed that Plaintiff's fingers were puffy, that she had tender PIP (finger) joints, that her wrists had squeeze tenderness, that she had discomfort with the right shoulder, that her hips were irritable on range of motion and were mildly restricted, and that she had discomfort in her knees and mild squeeze tenderness of her feet (Tr. 320). Dr. Qazi's impression after this exam

was that Plaintiff had possible inflammatory polyarthritis, right shoulder rotator cuff tendinitis, a recent rash, and that further testing was required to rule out underlying rheumatoid arthritis versus systemic lupus erythematosus.  *Id*.

On February 14, 2008, Dr. Qazi again saw Plaintiff and reported symptoms similar to the January 24 exam (Tr. 254-255).  In particular, Dr. Qazi noted that Plaintiff's knees had very painful range of motion, that her fingers were still puffy, that she had tender PIP (finger) joints and wrists, that her shoulders had discomfort with mild restriction in the right shoulder, and that she had squeeze tenderness in her feet (Tr. 254).  After this exam, Dr. Qazi's impression was inflammatory polyarthritis, possible seronegative rheumatoid arthritis, and right shoulder rotator cuff tendinitis. *Id.*

On July 8, 2008, Stephen Pomeranz, M.D., a neuroradiologist, performed a MRI of Plaintiff's lumbar spine (Tr. 610-611).  Dr. Pomeranz's impression was L4-L5 disc dessication, disc displacement with superimposed central and paracentral HNP that mildly effaces the thecal sac (Tr. 611).  Dr. Pomeranz also reported that circumferential spondylotic changes contributed to mild narrowing of the neural foramen and mild central canal stenosis primarily inferior to the disc level. *Id*.

Dr. Qazi re-examined Plaintiff on September 29, 2008, and reported markedly reduced synovitis (inflammation) in her joints, that her right shoulder had minimal discomfort on range of motion, that Plaintiff had a tender lower back and mildly irritable hips, squeeze tenderness of her feet, and that Plaintiff had a tender lower coccyx and lumbosacral spine (Tr. 668).  Dr Qazi's impression was that Plaintiff's inflammatory polyarthritis and seronegative rheumatoid arthritis were much better, that Plaintiff's right shoulder rotator cuff tendinitis had resolved, and the osteoarthritis

of Plaintiff's lower back had improved through physical therapy and the medication Darvocet (Tr. 668-669).

On January 19, 2009, Plaintiff reported a flare in joint pain, more pain in her lower back and right trochanteric bursa (hip), and slightly worse morning stiffness lasting 10-15 minutes (Tr. 678). On exam, Dr. Qazi reported inflammatory polyarthritis and seronegative rheumatoid arthritis, back pain, osteoarthritis of the back, right gluteal and trochanteric bursitis, and possible right lumbar radiculopathy (Tr. 678-679).

### 3.    Vocational Expert

Vocational Expert ("VE") David Dettmer also testified at the hearing (Tr. 44-46).  The VE classified Plaintiff's past work as a school secretary as "sedentary" work and her work as a bank teller as "light" work (Tr. 44).  The VE was given a hypothetical scenario to evaluate requiring him to assume the following: a person of Plaintiff's age (48 years old), with a 12th grade education, past work as discussed, with the ability to lift 20 pounds occasionally and 10 frequently; the ability to stand and walk in combination for at least six hours in a workday and sit at least six hours in a workday; occasional bending, stooping, twisting, squatting, kneeling, crawling, and climbing stairs, but no ability to go on ladders, scaffolds, ropes, nor work at heights or around hazardous moving machinery; a lack of ability to be exposed to extreme heat or cold; and the need to avoid even moderate exposure to vibration (Tr. 44).

Under this hypothetical, the VE testified that the individual would not be precluded from performing Plaintiff's past relevant work.  Furthermore, the VE opined that there would be other jobs such an individual could perform, including: cashier (of which there are approximately 32,000 jobs in Michigan), sales attendant (6,000 jobs in Michigan), and light assembly work (4,500 jobs in

Michigan) (Tr. 45). The VE stated that these jobs are all preformed at the "light" level of exertion, and are all within the hypothetical restrictions set forth above. *Id.*

### C.    *Plaintiff's Claims of Error*

On appeal, Plaintiff challenges the ALJ's ruling on two grounds. First, Plaintiff argues that the ALJ's ruling is not supported by substantial evidence as required by law. Specifically, Plaintiff contends that the Appeals Council failed to take into consideration new and material evidence supporting Plaintiff's claim of disability. *See* Plaintiff's Brief at 9-12. Second, Plaintiff argues that the ALJ erred by not taking into account the side effects of Plaintiff's prescription medications. *Id.* at 12-13.

## III.    DISCUSSION

### A.    *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has

failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla

of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II

benefits are available to qualifying wage earners who become disabled prior to the expiration of their

insured status; Title XVI benefits are available to poverty stricken adults and children who become

disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to
> last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

    The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of the
> impairments listed in the regulations, the claimant is conclusively
> presumed to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant
> work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the

-10-

> claimant can perform, in view of his or her age, education, and work
> experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.   *Analysis and Conclusions*

As noted earlier, Plaintiff makes two main arguments on appeal.  Each argument is discussed below:

### 1.   The ALJ's Decision Was Supported By Substantial Evidence and the Additional Evidence Submitted by Plaintiff to the Appeals Council Does Not Warrant Remand Under Sentence Six of 42 U.S.C. §405(g).

Plaintiff's first argument is that the ALJ's decision is unsupported by substantial evidence and remand of the case is appropriate under sentence six of 42 U.S.C. §405(g), as the additional evidence submitted by Plaintiff to the Appeals Council was both new and material.  Defendant responds that, contrary to Plaintiff's contention, the ALJ's determination that Plaintiff retained the RFC to perform light work, with some limitations, was supported by substantial evidence. Defendant

-11-

also responds that the Appeal Council's denial of a request for review is not subject to judicial review unless their action rests on a mistake of law (*see* Defendant's Brief at 15).

Plaintiff initially argues that the ALJ failed to consider that, on January 19, 2009, while visiting Dr. Qazi, Plaintiff reported "a flare of joint pain" as well as "slightly worse morning stiffness, lasting 10-15 minutes" (Tr. 678).  Defendant responds that the excerpts provided in Plaintiff's brief (*see* Plaintiff's Brief at 9-10) describe only Plaintiff's subjective complaints rather than Dr. Qazi's observations on clinical examination. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990).  Defendant is correct.  It is important to note that in his decision, the ALJ provides a discussion of Dr. Qazi's examination reports (Tr. 16-17) including the January 19, 2009 exam. Indeed, the ALJ stated

> "Dr. Qazi in January 2009 again diagnosed [Plaintiff] with inflammatory polyarthritis, seronegative rheumatoid arthritis and back pain, osteoarthritis of the back."

This reference to the January 2009 exam by Dr. Qazi suggests that the ALJ certainly considered Dr. Qazi's report from that exam and did not simply ignore it as Plaintiff suggests.

As to Plaintiff's contention that a remand of her case is appropriate under sentence six of 42 U.S.C. §405(g), Plaintiff argues that the evidence she submitted to the Appeals Council was both new and material.  Under *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990), a sentence six remand is "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."  Plaintiff asserts that her examination on September 9, 2009 at Michigan Pain Management Consultants with Jeffrey Kimpson, M.D., is evidence of a worsening of her condition after the ALJ's August 21, 2009 decision (*see* Plaintiff's Brief at 10-11).

-12-

Besides demonstrating that the additional evidence is new and material, Plaintiff must show that the additional evidence was not available at the time of the ALJ hearing and that there was good cause for not incorporating it into the record prior the ALJ's decision. Plaintiff fails in both regards. Plaintiff neglects to provide an explanation of why this medical evidence was not made available to the ALJ, other than stating that it "obviously could not have been presented to the ALJ for consideration, since it concerned a visit that took place just shortly after the ALJ rendered his August 21, 2009 opinion" (*See* Plaintiff's Brief at 10). This rationale is inadequate to satisfy the good cause requirement. There was nothing preventing Plaintiff from undergoing this evaluation in the years and months leading up to the hearing. The fact that the examination took place shortly after the ALJ rendered his decision, does not mean that Plaintiff's worsening condition could not have been determined before the hearing date.[2] Plaintiff must, therefore, provide a stronger basis for why this medical evidence could not have been made available to the ALJ. *See Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551 (6th Cir. 1984) (sentence six remand inappropriate where the plaintiff offered no explanation of why the medical evidence she sought to have considered on remand could not have been presented to the ALJ; also, there was no contention that the onset of the plaintiff's impairment occurred after the hearing).

Plaintiff also cannot establish the materiality of Dr. Kimpson's medical examination – *i.e.*, how it could have potentially affected the outcome of the ALJ's decision, rather than simply adding to the quantity of medical evidence already available. The Sixth Circuit addressed this issue in

---

[2]   Additionally, the fact that Dr. Kimpson's assessment was performed after Plaintiff received the ALJ's denial suggests that it was generated for the purposes of establishing disability and, therefore, is not "new" evidence. *See Koulizos v. Sec'y of Health & Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 12, 1986) (new and material evidence must relate to ongoing treatment and cannot have been generated expressly for purpose of proving disability).

-13-

*Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 149 (6th Cir. 1990) stating that the medical evidence which is "merely cumulative...[is] not 'material' within the meaning of 42 U.S.C. § 405(g) [as it] contained nothing that would cause the ALJ to change his opinion." *Id.*

Plaintiffs also argues that B.D. Choi, M.D., a State Agency reviewing physician, would not have had access to Dr. Qazi's January 19, 2009 exam when he performed his assessment of Plaintiff on April 8, 2008.   Specifically, Plaintiff avers that Dr. Qazi's exam suggests a worsening of Plaintiff's condition and that Dr. Choi's assessment was outdated.   Defendant responds stating that the ALJ's determination of a Plaintiff's RFC is a legal decision rather than a medical one and therefore the ALJ looks not only to the RFC assessment in determining Plaintiff's ability to perform a certain level of work, but all other medical evidence provided     (*see* Defendant's Brief at 7-8). As such, Dr. Choi's assessment merely provides the ALJ with additional evidence to assist in the decision making process.   Defendant is correct.   The ALJ applied a legal standard to the  medical facts provided to him.   The ALJ arrived at Plaintiff's residual functional capacity after considering both Dr. Choi's assessment and the rest of the medical records – including Dr. Qazi's January 19, 2009 exam of Plaintiff.   Further bolstering the ALJ's determination is the fact that Dr. Qazi's examination reports did not provide any concrete assessment of Plaintiff's abilities or functional limitations.   Therefore, the ALJ did not disregard treating physician source opinion when making this determination that Plaintiff was still able to perform "light work," with some additional limitations.

### 2.    The ALJ Did Not Err by Not Taking Into Account the Side Effects of the Medications Taken by Plaintiff

Plaintiff's second argument is that the ALJ failed to consider the side effects of the medications taken by Plaintiff when evaluating Plaintiff's disability claim.   However, a review

of the ALJ's decision shows that he properly evaluated Plaintiff's credibility in determining her ability to perform work. Subjective allegations cannot alone support a finding of disability. *See* 20 C.F.R. § 404.1529(a). Rather, the mere presence of an underlying medical condition, which could produce disabling symptoms, only satisfies the first prong of the Sixth Circuit standard for evaluating subjective complaints. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). To satisfy the second prong of the test – and prove that her subjective complaints are disabling – Plaintiff must present objective medical evidence confirming the severity of the alleged symptoms, or show that the medical condition is of such severity that it could reasonably be expected to produce disabling symptoms. *See Duncan*, 801 F.2d at 853.

In evaluating Plaintiff's credibility and her ability to work, the ALJ noted that Plaintiff "testified that she puts the dishes in the dishwasher, does the laundry, and takes care of her personal needs. She cooks and can go out with her husband to a movie or to the grocery store" (Tr. 17). The ALJ also noted that "[t]he record reflects that [Plaintiff] can pay bills, count change, handle a savings account, and use a checkbook/money orders.... She testified she also reads magazines" (Tr. 17 citing Tr. 129). Further, the ALJ noted that Plaintiff "occasionally goes to church" (Tr. 17 citing Tr. 129).

Significantly, the ALJ observed that "[n]o medical source has precluded [Plaintiff] from engaging in full time work. In fact, the record establishes no continuous period of twelve months duration when [Plaintiff] has been precluded from sustained work activity" (Tr. 19). The ALJ also observed that "[t]he record does not show that [Plaintiff] requires any special accommodations (*e.g.*, special breaks or positions) to relieve her pain or other symptoms. [Plaintiff] testified that she does not use a cane or other assistive device to ambulate" (Tr. 19). In addition, the ALJ noted that "the

-15-

objective medical evidence shows that when she takes the medications as directed, they have been effective in controlling many of her symptoms" (Tr. 19).

In sum, the ALJ competently considered the entire record and accommodated Plaintiff's limitations but ultimately concluded that Plaintiff's allegations of total disability could not be fully accepted (Tr. 18-19). *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) ("In applying [the *Duncan*] standard the reviewing court should show deference to the decision of the [ALJ] in assessing credibility"). It is well-established that this Court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 528 (6th Cir. 2006). The Court cannot substitute its own credibility determination for the ALJ's. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed ...." *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). The ALJ provided a detailed and lengthy discussion of his reasons for finding that Plaintiff's subjective complaints were not fully credible. Simply put, I find that the ALJ's credibility determination is supported by substantial evidence. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Infantado v. Astrue*, 263 F. App'x 469, 475-76 (6th Cir. 2008).

-16-

Finally, in establishing disability, "[a] social security disability claimant bears the ultimate burden of proof on the issue of disability." *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984). On March 5, 2009, at the ALJ hearing, the ALJ inquired about Plaintiff's medications. The ALJ asked Plaintiff the following question:

> Okay. And do you have any side effects from your Darvocet?

(Tr. 41). Plaintiff responded,

> I think it may make me tired. I don't know. I don't know if that's from the Darvocet or if it's from my chemo. I don't know if it's from my medication or --

(Tr. 41). ALJ asked,

> Other than your Darvocet do you have any side effects from any of the other medications that you're taking? Are there any side effects that you attribute to your chemo?

(Tr. 42). Plaintiff responded,

> I don't know what's -- if it's from my chemo or if it's from my medication. I don't know.

(Tr. 43). ALJ stated,

> Well, go ahead and describe it for us.

(Tr. 43). Plaintiff responded,

> I mean the tiredness. I'm not very quick. I mean I'm not very quick at things like I used to be. Maybe a little bit of nervousness and like I said tired, fatigued, but like I said I don't know if that's from my medication or if that's from the chemo that's making me like that.

As shown by this excerpt from the ALJ hearing, Plaintiff simply did not bear her burden of proof in establishing a correlation between the potential side effects of the medications she was taking and a disability resulting from those medications. In addition, Plaintiff is required to show that such side effects in some way affect her ability to perform past relevant work. As seen above,

-17-

Plaintiff's testimony at the ALJ hearing regarding her medications was equivocal and provided no evidence that the alleged side effects should impact her residual functional capacity.

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED,** that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless,

-18-

by motion and order, the page limit is extended by the court. The response shall address each issue

contained within the objections specifically and in the same order raised.

> s/Mark A. Randon
> _____
> MARK A. RANDON
> UNITED STATES MAGISTRATE JUDGE

Dated:  February 1, 2011

<u>*Certificate of Service*</u>

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, February 1, 2011, by electronic and/or first class U.S. mail.*

> *s/Melody R. Miles*
> _____
> *Case Manager to Magistrate Judge Mark A. Randon*
> *(313- 234-5542*