**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KIMBERLY ANN HALE,

        Plaintiff,                      Civil Case No. 10-10751
                                          UNITED STATES DISTRICT JUDGE
v.                                         PAUL D. BORMAN

                                          MAGISTRATE JUDGE
                                          MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY

        Defendant.
_____/

**OPINION AND ORDER (1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. No. 15), (2) DENYING PLAINTIFF'S OBJECTIONS (Dkt. No. 9), AND (3) DISMISSING THE ACTION**

Now before the Court is Kimberly Ann Hale's ("Plaintiff") Objections to Magistrate Judge Mark A. Randon's Report and Recommendation ("R&R") affirming the findings and conclusions of the Commissioner of Social Security ("Defendant"), denying Plaintiff's Motion for Summary Judgment, and granting Defendant's Motion for Summary Judgment. Plaintiff's Objections were filed on February 14, 2011 (Dkt. No. 17). Defendant did not respond.

For the reasons stated below, the Court will:

(1) Adopt Magistrate Judge Randon's Report and Recommendation granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment;

(2) Deny Plaintiff's Objections, and

(3) Dismiss the action.

**I. BACKGROUND**

1

On February 21, 2008, Plaintiff filed an Application for Disability Insurance Benefits ("DIB") alleging that she became fully disabled on October 26, 2008. (R. 14). Plaintiff's application was denied on May 1, 2008. (R. 49). Plaintiff requested a hearing, which was held on March 5, 2009, before Administrative Law Judge ("ALJ") William C. Thompson, Jr. (R. 22). On August 21, 2009, ALJ Thompson issued a Decision denying Plaintiff's DIB application. (R. 14-21). Plaintiff requested an appeal (R. 10), which was denied on January 29, 2010. (R. 1). Plaintiff then filed the instant Complaint on February 23, 2010. (Dkt. No. 1).

The medical evidence was adequately summarized in Magistrate Judge Randon's Report and Recommendation:

> On January 24, 2008, Plaintiff saw Parveen Qazi, M.D., a rheumatologist (Tr. 319). Upon examination, Dr. Qazi observed that Plaintiff's fingers were puffy, that she had tender PIP (finger) joints, that her wrists had squeeze tenderness, that she had discomfort with the right shoulder, that her hips were irritable on range of motion and were mildly restricted, and that she had discomfort in her knees and mild squeeze tenderness of her feet (Tr. 320). Dr. Qazi's impression after this exam was that Plaintiff had possible inflammatory polyarthritis, right shoulder rotator cuff tendinitis, a recent rash, and that further testing was required to rule out underlying rheumatoid arthritis versus systemic lupus erythematosus. *Id*.
>
> On February 14, 2008, Dr. Qazi again saw Plaintiff and reported symptoms similar to the January 24 exam (Tr. 254-255). In particular, Dr. Qazi noted that Plaintiff's knees had very painful range of motion, that her fingers were still puffy, that she had tender PIP (finger) joints and wrists, that her shoulders had discomfort with mild restriction in the right shoulder, and that she had squeeze tenderness in her feet (Tr. 254). After this exam, Dr. Qazi's impression was inflammatory polyarthritis, possible seronegative rheumatoid arthritis, and right shoulder rotator cuff tendinitis. *Id*.
>
> On July 8, 2008, Stephen Pomeranz, M.D., a neuroradiologist, performed a MRI of Plainitff's lumbar spine (Tr. 610-611). Dr. Pomeranz's impression was L4-L5 disc dessication, disc displacement with superimposed central and paracentral HNP that mildly effaces the thecal sac (Tr. 611). Dr. Pomeranz also reported

> that circumferential spondylotic changes contributed to mild narrowing of the neural foramen and mild central canal stenosis primarily inferior to the disc level. *Id.*
>
> Dr. Qazi re-examined Plaintiff on September 29. 2008, and reported markedly reduced synovitis (inflammation) in her joints, that her right shoulder had minimal discomfort on range of motion, that Plaintiff had a tender lower back and mildly irritable hips, squeeze tenderness of her feet, and that Plaintiff had a tender lower coccyx and lumbosacral spine (Tr. 668). Dr. Qazi's impression was that Plaintiff's inflammatory polyarthritis and seronegative rheumatoid arthritis were much better, that Plaintiff's right shoulder rotator cuff tendinitis had resolved, and the osteoarthritis of Plaintiff's lower back had improved through physical therapy and the medication Darvocet (Tr. 668-669).
>
> On January 19, 2009, Plaintiff reported a flare in joint pain, more pain in her lower back and right trochanteric bursa (hip), and slightly worse morning stiffness lasting 10-15 minutes (Tr. 678). On exam, Dr. Qazi reported inflammatory polyarthritis and seronegative rheumatoid arthritis, back pain, osteoarthritis of the back, right gluteal and trochanteric bursitis, and possible right lumbar radiculopathy.

(R&R 4-6).

At the hearing, Plaintiff stated that she could not work because of chronic pain:

> I still have to – I'm still tired. I still have the back pain. I have hip pain. I lay down quite a bit to rest because when my back starts hurting and stuff I have to lay down to take the pressure off like. I'm not as quick a thinker. Like sometimes I have trouble like coming up with a name or something I want to say. I think that's – I can't – I mean I can walk for some distance but –

(R. 30). Plaintiff stated that her daily activities included doing the dishes and laundry (R. 31), that she could cook some dinners like "tacos, taco salad, spaghetti," (R. 32), that she could walk unassisted for "[a] couple blocks," (R. 34), and that she could not drive or do grocery shopping (R. 34).

In his Decision, ALJ Thompson concluded that Plaintiff's arthritis and fatigue qualified as

severe impairments, but that her residual functional capacity did not preclude her past relevant work as a school secretary and bank teller. (R. 21). Plaintiff requested a review, which was denied by the Appeals Council. (R. 1-4).

After the ALJ hearing, Dr. Qazi referred Plaintiff to Dr. Kimpson at Michigan Pain Management Consultants, who examined Plaintiff on September 8, 2009. Dr. Kimpson observed that Plaintiff was tender over her right hip, and that her movement was "provocative for increased low back pain." (R. 693). Dr. Kimpson recommended a trial of lumbar epidural steroid injections. (R. 693). Plaintiff submitted this post-hearing medical record to the Appeals Council so that it could be incorporated into the record on appeal. (R. 5, 169-173).

In her Motion for Summary Judgment, Plaintiff argued that the ALJ erred by not taking into account the side effects of Plaintiff's medications, and that the Appeals Council failed to consider the September 8, 2009 medical record from Dr. Qazi. (R&R at 7). However, Magistrate Judge Randon found that the ALJ's Decision was supported by substantial evidence and recommended granting Defendant's Motion for Summary Judgment. (R&R at 18).

Now before the Court are Plaintiff's Objections to the Report and Recommendation.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) governs dispositive motions referred to a United States Magistrate Judge. The Rule states in pertinent part:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

This Court's review of the administrative proceedings is limited to determining whether the

4

ALJ applied the correct legal standard or whether the decision was supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Kyle v. Comm'r of Social Security*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is more than a mere scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court does not "resolve conflicts in the evidence, nor decide questions of credibility." *Id.*

### III. ANALYSIS

#### A. Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining her residual functional capacity for three reasons. Plaintiff first argues that the ALJ erred because the Decision does not address Plaintiff's medications and their side effects. Plaintiff next argues that the ALJ erred in finding that Plaintiff was not disabled solely on the basis of her pain. Plaintiff's third argument is that ALJ Thompson erred by not attributing more weight to Dr. Qazi's opinion.

*1. The ALJ Adequately Considered Plaintiff's Medication Side Effects.*

Plaintiff states that the ALJ's Decision does not address "Plaintiff's multiple medications and/or the side effects from the medications as required by 20 CFR Section 404.1529(c)(3)." (Pl.'s Obj. at 2). Section 404.1529(c)(3)(iv) lists "[t]he type, dosage, effectiveness, and side effects of any medication" as "factors relevant to" determining the extent of a claimant's symptoms. This Section does not require the ALJ to address the side effects of Plaintiff's medications in the written Decision.

It is clear, however, that the ALJ did consider the side effects of Plainitff's medications, as required by § 404.1529(c)(3)(iv). At the March 5, 2009 hearing, ALJ Thompson asked Plaintiff to describe the side effects caused by her medications:

    Q    Okay. And do you have any side effects from your Darvocet?

> A      I think it may make me tired. I don't know. I don't know if that's Darvocet or if it's from my chemo. I don't know if it's from my medication or –
>
> [. . . .]
>
> Q      Other than your Darvocet do you have any side effects from any of the other medications that you're taking? Are there any side effects that you attribute to your chemo?
>
> A      I don't know what's – if it's from my chemo or if it's from my medication. I don't know.
>
> Q      Well, go ahead and describe it for us.
>
> A      I mean the tiredness. I'm not very quick. I mean I'm not very quick at things like I used to be. Maybe a little bit of nervousness and like I said tired, fatigued, but like I said I don't know if that's from my medication or if that's from the chemo that's making me like that.

(R. 41-43).

Plaintiff's Disability Report also contains information about her medication side effects. (R. 106-08). Plaintiff claimed that Ativan "Makes [her] feel a little tired," and described the side effects from Darvocet as, "None really. Maybe a little tired." (R. 107).

Upon review of the record, the Court does not find that the ALJ erred in considering the side effects of Plaintiff's medications.

*2. The ALJ Did Not Err in Evaluating the Credibility of Plaintiff's Pain Symptoms.*

Plaintiff argues that the ALJ erred in assessing the credibility of her disabling pain complaints.

Plaintiff cites to *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir. 1986). In *Duncan*, the Sixth Circuit noted that "subjective complaints of pain may support a claim of disability[,]" but that "credibility related to subjective complaints of pain rest with the ALJ[.]"

*Id*. at 852.  The Sixth Circuit then laid out the standard for evaluating complaints of disabling pain as follows:

> Under the new standard, there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Id*. at 853 (citation and punctuation omitted).

The ALJ found that "the evidence does not support the claims of the claimant's disabling limitations to the degree alleged."  (R. 19).  The ALJ specifically noted that "[n]o medical source has precluded the claimant from engaging in full time work[,]" and that "[t]here is no evidence of record to support the claimant's allegation that she must lie down for 2-3 hours 3 times per day."  (R. 19).

Plaintiff argues that "there is ample medical evidence including physical examination findings, as well as pain and other symptoms consistent with the medical documentation to support her complaints of disabling pain."  (Pl.'s Obj. at 2).  Notably, however, Plaintiff does not buttress this claim with any citation to the record.

Even if there were some evidence supporting Plaintiff's claims of disabling pain, this evidence would fall into the "'zone of choice,' within which the Secretary may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

Moreover, the ALJ noted: "I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 . . ."  (R. 18).  Analysis under these requirements is "not inconsistent with the standards set forth in *Duncan*."  *Pasco v. Comm'r of*

*Social Sec.*, 137 Fed. Appx. 828, 835 (6th Cir. 2005).

The Court therefore finds no error in ALJ Thompson's evaluation of Plaintiff's pain symptoms.

*3. The ALJ Did Not Err in Evaluating the Medical Evidence.*

Plaintiff argues that the ALJ erred in giving greater weight to the consultative examiner than Dr. Qazi, who was a treating physician.

Under the treating physician rule, an ALJ must give "controlling weight to the medical opinion of a treating physician if that opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . .'" *White v. Comm'r of Social Sec.*, 572 F.3d 272, 285-86 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Still, the ultimate determination of Plaintiff's disability "rests with the administrative law judge." *Id.* at 286 (citing *Walker v. Sec'y of Health and Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992)).

Plaintiff argues that ALJ Thompson failed to state why greater weight was attributed to the consultative examiner. However, ALJ Thompson's Decision states:

> I [have] assigned significant weight to the state agency medical consultants' opinions with regard to the claimant's physical and mental limitations pursuant to 20 CFR § 404.1527 and SSR 96-6p because they were based upon a th[o]rough review of the evidence[.] . . . They are supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as detailed treatment notes, which provide a reasonable basis for claimant's chronic symptoms and resulting limitations. Moreover, their opinions are not inconsistent with other substantial evidence of record.

(R. 20). The ALJ found that the consultative examiner's opinion was supported by the medical evidence, including Dr. Qazi's opinion. Indeed, Plaintiff does not indicate how Dr. Qazi's opinion,

or any other opinion, differs significantly from that of the consultative examiner. The Court finds no error in the ALJ's consideration of the medical evidence.

The Court thus finds that ALJ Thompson's findings with regard to Plaintiff's residual functional capacity were supported by substantial evidence.

## B. The September 8, 2009 Medical Record

Plaintiff argues that Dr. Kimpson's September 8, 2009 report was new and material evidence requiring a sentence six remand.

This Court has the authority to remand a case for further administrative proceedings pursuant to 42 U.S.C. § 405(g). *See Hollon v. Comm'r of Social Security*, 447 F.3d 477, 482-83 (6th Cir. 2006). A remand under sentence six of this section is appropriate where the plaintiff has shown "(i) that the evidence at issue is both 'new' and 'material,' and (ii) that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id.* (quoting § 405(g)). Plaintiff has not made the required showing for either the "material" or "good cause" elements.

Although the 2009 report is based on an MRI from July 2008, it was "not in existence or available to the claimant at the time of the administrative proceeding," and is therefore "new." *See* § 405(g). However, for the report to be material, Plaintiff must show that there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.*

Plaintiff argues that the report is material because it diagnoses Plaintiff with "additional severe medical conditions of degeneration [sic] disc disease of the lumbar spine, herniated nucleus pulposus of the lumbar spine, and lumbar radiculopathy[.]" (Pl.'s Obj. at 3). This is additional evidence, Plaintiff argues, that her condition was worsening, as documented by Dr. Qazi. (Pl.'s Obj. at 3-4).

The Sixth Circuit has held that a sentence six remand is not appropriate for "medical evidence of a deteriorated condition." *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). Moreover, if, as Plaintiff argues, the 2009 record confirmed Dr. Qazi's January 2009 record that Plaintiff's condition was worsening, it would be cumulative evidence. *See Ferguson v. Comm'r of Social Sec.*, 628 F.3d 269, 277 (6th Cir. 2010) (holding that records "confirming the pre-existing evidence" were not material).

Plaintiff has also not shown that the 2009 record reveals any further information about her ability to perform light work during the period of her claimed disability, and has thus failed to show that it is material. *Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Plaintiff also cannot show good cause for failing to acquire the 2009 record prior to the administrative hearing. Although the examination was not performed until after the hearing, "the complainant must give a valid reason for [her] failure to obtain evidence prior to the hearing." *Oliver*, 804 F.2d at 966. Plaintiff has not demonstrated why she could not get a second opinion on her July 2008 MRI prior to the administrative hearing. *Id*.

Accordingly, the Court declines remand pursuant to sentence six of 42 U.S.C. § 405(g).

## IV.  CONCLUSION

For the reasons stated above, the Court:

(1) **ADOPTS** Magistrate Judge Randon's Report and Recommendation granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment;

(2) **DENIES** Plaintiff's Objections to the Report and Recommendation, and

(3) **DISMISSES** the action **WITH PREJUDICE**.

This is a final order and closes the case.

**SO ORDERED.**

                    **S/Paul D. Borman**
                    **PAUL D. BORMAN**
                    **UNITED STATES DISTRICT JUDGE**

Dated: May 2, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 2, 2011.

                    S/Denise Goodine
                    Case Manager